ROWLAND B. PAGE, as Trustee in Bankruptcy of BULLARD CREAM Co., INC., a Bankrupt, Respondent, *v.* WATERTOWN CONSUMERS BREWING COMPANY, Appellant.

Third Department, November 11, 1926.

**Bankruptcy — action to recover unlawful preference — bankrupt held lease from defendant — few days before bankruptcy bankrupt sold its branch business in defendant's town — sale agreement provided that buyer could retain amount of rent due — said amount was retained and buyer settled rent with defendant for approximately one-half — said payment constituted preference under Bankruptcy Act, § 60, subd. a — indirect payment is same as direct payment — evidence shows defendant had, under Bankruptcy Act, § 60, subd. b, reasonable cause to believe payment would effect preference.**

In an action by a trustee in bankruptcy to recover an unlawful preference alleged to have been paid to a creditor of the bankrupt, the evidence establishes that the payment constituted an unlawful preference, since it appears that the bankrupt had a lease of a building belonging to the defendant and a short time before bankruptcy the bankrupt sold to a third person its branch business in the defendant's city under an agreement whereby the purchaser was to retain from the purchase price the sum of $1,933.92, the amount of the rent then overdue; that the purchaser settled with the defendant by paying it the sum of $1,000 and received from the treasurer of the defendant, who had for more than a year been a director of the bankrupt, a receipt in full for overdue rent.

It was the intention of the parties that the purchaser should pay the rent, and although the payment was made indirectly, it had the same effect under subdivision a of section 60 of the Bankruptcy Act as a direct payment would have had and resulted in giving to the defendant a greater percentage of its debt than any other creditors of the same class would receive.

The fact that the defendant had reasonable cause to believe that the transfer would effect a preference within the meaning of subdivision b of section 60 of the Bankruptcy Act, appears from the evidence which shows that the treasurer

of the defendant had been a director of the bankrupt for a year prior to bankruptcy and knew from the reports of the bankrupt that it had been losing money during all that period; that the defendant for several days prior to bankruptcy insisted that the bankrupt pay to it daily a sum equal to about one-half of the daily rent.

APPEAL by the defendant, Watertown Consumers Brewing Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of St. Lawrence on the 26th day of December, 1925, upon the decision of the court rendered after a trial at .chambers before the court without a jury.

*Conboy & Hendricks* [*T. Arthur Hendricks* of counsel], for the appellant.

*Frank L. Cubley,* for the respondent.

COCHRANE, P. J.   The Bullard Cream Co., Inc., was organized in the year 1920 for the purpose of manufacturing and selling ice cream and other milk products.   It had its principal office and place of business in Potsdam, N. Y   In 1921 a branch plant was inaugurated in Watertown, N. Y.   To that end a lease was made with the defendant, Watertown Consumers Brewing Company. The latter company leased to the Bullard Company a portion of its plant in Watertown for the annual rental of $5,000.   The business was not a financial success.   On October 10, 1922, the Bullard Company as party of the first part by an agreement in writing with one Carl B. Martin as party of the second part sold all of its property in and about the city of Watertown for the sum of $7,211.11.   The agreement contained the following provision: " It is further understood that this transfer covers any and all leases and leasehold rights had by the first party in and about the said Brewing Company's plant and that in settling this transfer the said second party may deduct from the said purchase price the amount of rent so due and unpaid to the said Brewing Company on the part of the first party in sum of $1,933.92."   The last-mentioned amount, $1,933.92, was the amount at that time owing the brewing company by the Bullard Company for rent. Although the nominal purchaser under this contract was Carl B. Martin, the real purchasers consisted of himself and five other persons who were associated in the purchase of the Watertown property.   On October 12, 1922, they paid to the Bullard Company in cash $5,277.19, retaining $1,933.92.   Of this latter amount they paid $1,000 to the defendant company, taking from it a receipt in full for the unpaid rent, and also procured a cancellation of the lease which had about six months to run before it could be ter-

minated at the option of the Bullard Company. It does not appear what became of the remaining $933.92. On October 17, 1922, at a meeting of the directors of the Bullard Company, a resolution was adopted reciting that the indebtedness of said company was upwards of $50,000 and that its assets were about $18,000 and consenting that its creditors might proceed " in bankruptcy or otherwise as any creditors may determine." On the same day a petition in involuntary bankruptcy against the Bullard Company was executed. It was filed October 25, 1922, and such proceedings were thereafter had that said company was adjudicated an involuntary bankrupt and the plaintiff was appointed its trustee in bankruptcy. He brings this action to recover of the brewing company $1,000 received by it in settlement of its claim for rent, claiming that such payment was an unlawful preference under the provisions of the United States Bankruptcy Act.

Section 60 of the Bankruptcy Act, in subdivision a, provides as follows: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. * * *." (See 30 U. S. Stat. at Large, 562, § 60, subd. a, as amd. by 32 id. 799, § 13. Since amd. by 44 id. 666, § 14.) Subdivision b of the said section provides that if such transfer operates as a preference " and the person receiving it or to be benefited thereby, or. his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee." (See 30 U. S. Stat. at Large, 562, § 60, subd. b, as amd. by 36 id. 842, § 11.)

Two questions arise on this appeal: *First,* was there an unlawful preference, and *second,* if so did the defendant have reasonable cause to believe that the transfer would effect such preference.

In respect to the first question, as to whether an unlawful preference was created, it was the intention of the Bullard Company that Martin and his colleagues should use the $1,933.92 for the purpose of paying the brewing company. At a stockholders' meeting of the Bullard Company held October 10, 1922, when the Martin agreement was authorized, the minutes of the meeting show that a motion was carried " that the Watertown business, as per agreement, be sold to C. B. Martin for the sum of $7,211.11, from which should be deducted $1,933.92 to be paid by him to the Watertown Brewing Company for rent due up to and including October 10th, 1922." Martin and his associates did pay the rent and no reason

is given why they did so except for the benefit of the brewing company. They procured a cancellation of the lease. If it appeared that such cancellation was for their benefit so that they might procure a lease on more favorable terms or something of that kind, it might be different. There is no explanation for the cancellation of the lease nor for the settlement of the rent at about fifty per cent of its amount. It does not appear that either the Bullard Company or Martin and his associates derived any advantage from the settlement of the rent and of course the advantage to the defendant was that it procured a greater percentage of its debt than other creditors of the same class. Suppose that Martin and his associates had paid the Bullard Company the entire $7,211.11 and the latter company had then out of that amount paid the defendant its rent. There would be no question that this latter amount would constitute a preferential payment. That seems to be precisely the effect of what was done. There has been a sale to Martin and his associates for $7,211.11. Instead of paying the Bullard Company the full amount and the latter company paying therefrom the rent of the defendant it authorized or permitted Martin and his associates to make that payment. The Bullard Company has done circuitously what it could not do directly but the effect is the same. There was a valid transfer of its property by the Bullard Company to Martin and his associates for $7,211.11. There has been an unlawful transfer by the Bullard Company to the defendant of $1,000. The two transfers are distinct. The fact that the Bullard Company made the transfer of $1,000 to the defendant indirectly through Martin and his associates instead of making it directly in no wise affects the result. The law looks not at the method of performance but at the effect of the performance.

Did the brewing company have reasonable cause to believe that the payment to it of the $1,000 was effecting a preference in its favor? There is an abundance of evidence that said company had reason to believe that the Bullard Company was insolvent. One Gotham was made a director of the Bullard Company a year before the transaction in question at a time when the treasurer's report showed that the company had lost over $12,000. He remained a director until the company went into bankruptcy although it appears at some of the meetings he was not present. He was also the treasurer of the brewing company and received the $1,000 for that company and gave a receipt for the rent in full. During the first ten or twelve days in October before the money was received the brewing company insisted that the Bullard Company should pay daily $10 as rent, giving as the reason therefor that said com-

pany was running behind and the mere fact that it accepted a trifle more than fifty per cent of its claim in full payment thereof is persuasive evidence that it believed the Bullard Company to be hopelessly insolvent and that such settlement would prove more advantageous than a proportional payment of its claim with other creditors. We think the facts justified the court in finding that there was an unlawful preference and that the defendant understood that it was being preferred.

The judgment should be affirmed, with costs.

Judgment unanimously affirmed, with costs.